No. 34,274

Fanas C. Johnson, *Appellee,* v. H. N. Hensley, George E. Gard and Charles C. Calkin, as Members of the Board of Managers of the Kansas Soldiers' Home, *Appellants.*

(90 P. 2d 1088)

Opinion filed June 10, 1939.

*Jay S. Parker,* attorney general, *C. Glenn Morris,* assistant attorney general, *George E. Gard,* of Kansas City, and *Charles C. Calkin,* of Kingman, for the appellants.

*E. C. Minner,* of Dodge City, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was a proceeding in mandamus to compel the members of the board of managers for the Kansas soldiers' home at Fort Dodge to admit to that institution the wife of the plaintiff, the latter being a Spanish American War veteran, who was already an inmate of that institution. The plaintiff prevailed, and defendants appeal from the order sustaining plaintiff's motion to quash defendants' answer to the alternative writ and from the judgment granting the peremptory writ.

The pertinent averments of the alternative writ, in substance, were: Plaintiff is a veteran of the Spanish American War and in the year 1934 was admitted to and has ever since been a member in good standing of that home; it is the duty of defendants to admit to membership therein all persons legally entitled thereto, and the wife of plaintiff is legally entitled to such membership; in the month of April, 1938, plaintiff married Olive Johnson, fifty-six years of age, who is wholly dependent upon him for support and maintenance; on April 3, 1938, plaintiff and Olive Johnson presented their applica-

tion for the admission of Olive Johnson, which application defendants rejected; plaintiff has no adequate, plain and complete remedy at law and will suffer irreparable damage and injury if the court does not compel defendants to admit his wife to the home.

The answer admitted all the averments of the alternative writ except that the wife of the plaintiff was legally entitled to admission to the home. The answer in substance asserted defendants did not act on the application in a purely ministerial capacity, but that on the contrary their duties required them to exercise, and that they did exercise, prudence, discretion and judgment, in determining the eligibility of the applicant for admission, and further alleged:

"Olive Johnson, wife of plaintiff, was not then and is not now entitled to admission to membership in said Kansas soldiers' home, for the reasons following, to wit:

"1. At the time the said Fanas C. Johnson, plaintiff, made application for membership in said home, he was then a married man, but his wife was one other than Olive Johnson. Said wife was then dependent upon the said Fanas C. Johnson for her support. The application of said Fanas C. Johnson for admission to said home included the request that his wife at that time be also admitted to said home as a member of his family, and said wife was so admitted. The said Fanas C. Johnson and his wife were received into said home and continued to remain as members thereof until the death of said wife. That the said Fanas C. Johnson, as a widower, continued to reside in said home from the time of the death of his wife until his marriage to the said Olive Johnson, and still continues to remain a member of and resident of said home under his original application and the order admitting him and his wife to membership in said home about the month of September, 1934.

"2. That the said Fanas C. Johnson while a member of said home, on April 30, 1938, married the above-named Olive Johnson and soon thereafter said plaintiff made application for the said Olive Johnson to be admitted to membership in said home. At the time of the marriage of the said Olive Johnson and said plaintiff, said Olive Johnson was not a member of said home or the Mother Bickerdyke annex, or entitled to admission thereto or membership therein, and was not, prior to her marriage to the said Fanas C. Johnson, a member of his family or dependent upon him for support.

"3. That the said plaintiff is not an honorably discharged soldier, sailor or marine who served in the army or navy of the United States during the war of the rebellion, and has not reached the age of 65 years.

"4. The statutes of the state of Kansas governing eligibility to membership in said home of soldiers, sailors and marines, and such members of their families as are dependent upon them for support, provide that admission to said institution shall be subject to such rules and regulations as may be established by the board of managers for the management and government of said institution, and upon the approval of application for admission by said board of managers. That prior to the death of the wife of the said plaintiff, who was

originally admitted to membership in said home as the dependent member of the family of said plaintiff, and prior to the marriage of the said Olive Johnson and the above-named plaintiff, the board of managers of the said home adopted the following rule, which rule was in effect at the time of the marriage of said Olive Johnson and said plaintiff and at the time of plaintiff's application for membership of the said Olive Johnson in said home, and at the time said application was rejected, and still remains in full force and effect, to wit:

" 'Section 312. No veteran shall be eligible for admission into the Kansas soldiers' home who has been married to his wife for a period of less than two years prior to the time of admission.

"'Any widow or widower already admitted into either the Kansas soldiers' home or the Mother Bickerdyke annex, must submit a new application for membership in the event such member marries any person not already a member of the Kansas soldiers' home or the Mother Bickerdyke annex.'

"That said rule was adopted in the judgment and discretion of said board of managers as a regulation calculated to be for the best interests of said home in the management and government thereof, and to have admitted the said Olive Johnson as a member of said home or to now so admit her would be a violation of said rule and in disregard of the welfare of said institution with respect to the management and government thereof.

"5. The statutes of the state of Kansas governing eligibility to membership in said home provide only for the granting of membership upon the application of honorably discharged soldiers, sailors and marines, and the status of such applicants is fixed and determined by said statutes as of the time said soldier, sailor or marine makes application for and becomes a member of said home, and makes no provision authorizing the admission to said home of a wife of a member where said marriage occurs while said soldier, sailor, or marine is a member of said home and the marriage is to one not a member of said home.

"No provision is made by law authorizing a soldier, sailor or marine while a member of said home, to acquire a dependent by marriage to one not a member of said home, or the Mother Bickerdyke annex, and thus entitle said wife so married to come into said home as a dependent of said soldier, sailor or marine, unless said soldier, sailor or marine served in the army or navy of the United States during the war of the rebellion, and said wife so married has reached the age of 65 years, and said ex-soldier, or ex-marine, or ex-sailor has lived in the state of Kansas not less than ten years."

The ground of the motion to quash defendants' answer was that it failed to constitute a defense to the alternative writ. The motion to quash the answer admitted all facts properly pleaded therein. We therefore start with the conceded fact that defendants did not act unreasonably, arbitrarily or capriciously, but in good faith in rejecting the application for admission. Plaintiff does not contend the rules established by defendants are unreasonable. He insists defendants are without authority to make any rules which affect the right of admission to the home. The main question presented in the instant case is, therefore, whether this particular wife of this plain-

tiff is entitled to admission to the home as a matter of right and notwithstanding the exercise of reasonable discretion by defendants in rejecting the application.

It is conceded by the parties the answer turns mainly upon the proper construction of two statutes. The pertinent portion of the first statute, G. S. 1935, 76-1908, provides:

"All honorably discharged soldiers, sailors and marines, who served in the army or navy of the United States during the war of the rebellion, war with Spain, Philippine insurrection, Boxer uprising or World War, and who were honorably discharged, who may be disabled by disease, wounds, old age, or otherwise disabled, and who have no adequate means of support, and who by reason of such disability are incapacitated from earning their living, and who would otherwise be dependent upon public or private charity, together with such members of their families as are dependent upon them for support, *shall be entitled to admission* to such institution, *subject to the rules and regulations that may be established by the board of managers for the management and government thereof, and upon the approval of their application by the said board of managers: . . ."* (Italics inserted.)

The second statute, G. S. 1935, 76-1915, reads:

"That from and after the taking effect of this act no wife of any soldier shall be admitted to the home as a member unless she has attained the age of fifty years, except in special cases where the wife of applicant is a confirmed invalid, or the soldier making the application is a confirmed invalid and needs the constant attention of his wife: *Provided,* That the wife of any honorably discharged soldier, sailor or marine who served in the army or navy of the United States during the *war of the rebellion* shall be eligible to admission, *irrespective of the time of her marriage with said ex-soldier, ex-sailor or ex-marine, and irrespective of her financial standing: Provided,* That said wife has reached the age of 65 years and that said ex-soldier, ex-sailor or ex-marine has lived in the state of Kansas not less than ten years. Hereafter no girls shall be admitted to the institution after they reach the age of fourteen years, or retained after they reach the age of sixteen years; and boys shall not be admitted after they reach the age of twelve years or retained after they reach the age of fourteen years, unless the same be incapable of earning their support by their own labor: *Provided,* That there is nothing in this act that shall be construed to apply to or prevent the marriage of a soldier or soldier's widow, when *both are already inmates* of the state soldiers' home, or the Mother Bickerdyke annex, provided said soldier's widow has reached the age of fifty years at the time of marriage." (Italics inserted.)

The Kansas soldiers' home was established in 1889. (Laws 1889, ch. 235, § 1.) In 1929 the legislature (Laws 1929, ch. 269, 270) amended both R. S. 1923, 76-1908 and 76-1915. The statutes are *in pari materia* and must be considered together if such consideration aids in ascertaining the legislative intent. (*Voran v. Wright,* 129

Kan. 1, 281 Pac. 938; *Rehearing,* 129 Kan. 601, 284 Pac. 807.) The cardinal canon of construction, to which all mere rules of interpretation are subordinate, is that the intent, when ascertainable, governs. (*State v. Bancroft,* 22 Kan. 170; *Railway Co. v. Cowley County,* 103 Kan. 681, 176 Pac. 99.) Plaintiff insists that, as a member of the home, his marriage at any time to a woman fifty years of age. who is dependent upon him for support, renders her immediately eligible to membership in the home and that defendants have no discretion in the matter of her admission. On the other hand, defendants insist that manifestly was not the legislative intent. They first contend the *eligibility* of a wife to membership in the home must, under a reasonable construction of G. S. 1935, 76-1908 and 76-1915, be determined as of the date of the soldier, sailor or marine's original admission to the home, except in the two specific instances provided in G. S. 1935, 76-1915, and that plaintiff's wife admittedly does not come within either of those two exceptions. Second, defendants contend mere *eligibility* to membership of a soldier, sailor or marine, or of a dependent member of his family, does not under the provisions of G. S. 1935, 76-1908, in and of itself, compel admission, but that actual admission is subject to reasonable rules and regulations which may be established by the board of managers.

Plaintiff contends the rules and regulations which defendants may establish under G. S. 1935, 76-1908, pertain solely to the management and government of the home after the applicant has been admitted. The construction is too restricted. The wording of the statute is, "shall be entitled to admission . . . subject to the rules and regulations that may be established by the board of managers for the management and government thereof, and upon the approval of their application by the said board of managers." Reasonable rules and regulations pertaining to the admission of eligible members may at times be highly necessary in order to insure the proper management and government of the home. It is common knowledge that the dependency of veterans is again increasing at a rapid rate. Under plaintiff's contention children of a veteran, regardless of their age, and his dependent parents as well, if members of the veteran's family and dependent upon him for support, could all demand immediate admission to the home as a matter of right irrespective of the limited capacity of the home and regardless of inadequate finances with which to operate the home. Under plaintiff's

theory a veteran in the home might also adopt a dependent child or children and insist upon his or their immediate admission as a matter of right. In addition to the provision of G. S. 1935, 76-1908, pertaining to the rule-making power of defendants, it will be observed that statute also reads: "Shall be entitled to admission . . . upon the approval of their application by the said board of managers." That provision is further evidence of the legislative intent that admission to the home was not intended to be solely a matter of right.

The wife of plaintiff does not come within any of the exceptions contained in G. S. 1935, 76-1915, pertaining to certain wives of veterans of the war of the rebellion, nor does she come within the provision of that statute pertaining to the marriage of a soldier when both he and the widow he marries are already inmates of the home. It will be observed that under the first proviso of that statute the lawmakers clearly intended to make special provision for the wife of any honorably discharged veteran of the war of the rebellion. It expressly declared if the wife was sixty-five years of age and the veteran had lived in the state not less than ten years, the wife should be eligible to admission *irrespective of the time of her marriage* or her financial standing. A similar exception as to the date of marriage is made where both parties to the marriage are already inmates of the home. These exceptions as to the date of marriage are further evidence of the legislative intent that wives other than those included within the exceptions should not be entitled to admission solely as a matter of right, and irrespective of the date of their marriage. The first portion of that statute provides no wife shall be admitted to the home unless she has attained the age of fifty years, except in the special cases enumerated. It does not make it mandatory, however, that every wife who has attained that age is entitled to admission as a matter of right, irrespective of the date of her marriage.

In connection with the actual operation of the home it is well also to note the provisions of G. S. 1935, 76-1903. It reads:

"The board of managers of the Kansas soldiers' home shall prepare a system of government for said home, embracing all such rules and regulations as may be necessary for the preservation of order, enforcing discipline, and preserving the health of the inmates of said institution; and such regulations may be amended or supplemented by said board as occasion may require."

The state of North Dakota has a similar statute. A veteran who was not a dependent sought admission to the soldiers' home of that

state. Another statute of that state contained the following provision: "The object of the soldiers' home shall be to provide a home and sustenance for *all* honorably discharged soldiers." (Our italics.) In *State, ex rel. Skeffington, v. Seigfried,* 40 N. D. 57, 168 N. W. 62, that court said:

"We, in short, entertain no question as to the power of the board to adopt rules of admission as well as of government, and we believe that the power conferred by the statute (§ 1781) to 'make rules and regulations not inconsistent with the constitution of the United States, or of this state for the *management* and government of such homes, including such rules as it shall deem necessary for the preservation of order, enforcing discipline and preserving the health of its inmates,' is sufficiently comprehensive for the purpose. Surely rules which shall prevent overcrowding relate to the government of the institution, to the preservation of order, and the preservation of the health of its inmates, and surely a rule which prevents overcrowding by rejecting those who have other abundant means of support is not an arbitrary exercise of the power. It is to be remembered that for twenty years or more the control of the home has been in the hands of a board of trustees made up entirely of old soldiers. And it would be unreasonable to suppose that such a board would not have at heart the best interests of all of their old comrades, or to suppose that they would not have a rational conception of the real purposes for which the home was instituted." (p. 65.)

In a specially concurring opinion by Mr. Justice Robinson it was said:

"The object of the statute was as far as practicable to provide a home for *all* of a certain class who need a home, but not for *all* such as may apply regardless of their needs and the capacity of the home. Regardless of the word 'all' or any other word in the statute, it must be given a construction in accord with reason and common sense." (p. 67.)

In the instant case the real question presented is not whether defendants abused their discretion in the establishment of rules and regulations for the management and government of the home, but whether the rule-making power of defendants extends to the subject of the admission of applicants to the home. We are convinced it does.

Both parties have ably discussed the legislative history of the statutes involved. Such history may properly be considered as an aid in determining legislative intent. (*State v. Kelly,* 71 Kan. 811, 81 Pac. 450.) A review of the history of the statutes here involved, while interesting, does not affect the conclusion we have reached. The judgment allowing the writ must be reversed. It is so ordered.