No. 41,014

Malcolm M. Gray, *Appellee*, v. Jack B. Jenkins, *Appellant*.

(326 P. 2d 319)

Opinion filed June 7, 1958.

*Henry L. Daniels,* of Topeka, argued the cause, and was on the briefs for appellant.

*Eugene W. Hiatt,* of Topeka, argued the cause, and was on the briefs for appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by the Superintendent of the Motor Vehicle Department from an order of the lower court which sustained a motion for judgment on the pleadings and granted a peremptory writ of mandamus upon the application of a civil service employee of the State of Kansas requiring the Superintendent to more specifically state the reasons for the employee's dismissal.

The principal question presented is whether the extraordinary remedy of mandamus may be sought to compel the Superintendent, upon the facts and circumstances herein presented, to specifically state the reasons for the discharge of a permanently classified employee, while a statutory appeal of the employee is pending before the Kansas Civil Service Board.

The facts material to the disposition of this appeal are as follows: On the 28th day of August, 1957, Malcolm M. Gray, a civil service employee, appellee herein, was dismissed for cause. Pursuant to G. S. 1949, 75-2949, the Superintendent of the Motor Vehicle Department, appellant herein, prepared a letter setting forth the reasons for Gray's dismissal and within time mailed the original to Walter F. Kuiken, Director of Civil Service, Kansas Department of Administration, and a copy to Gray. The body of the letter reads:

"Please be advised that on August 28, 1957, Mr. Malcolm M. Gray, Executive I, a permanent classified employee assigned as Supervisor of the Dealers' Division of the Motor Vehicle Department was dismissed for cause.

"Pursuant to Civil Service Rule No. 19-10-5, please be advised that the reasons for Mr. Gray's dismissal were:

"(1) General incompetence—inability to direct the activities of his section.

"(2) Issuance of contradictory directives to several dealers subject to regulation by his section.

"(3) Causing confusion in his section by the issuance of contradictory instructions.

"(4) Failure to require dealers' reports as provided by G. S. 1949, Section 8-137.

"(5) Unsatisfactory liaison with Titles and Registrations Division and others.

"(6) Incompetent office management.

"(7) Sleeping on duty."

Within the statutory time Gray filed his appeal from the dismissal with the Kansas Civil Service Board. The date for hearing Gray's appeal was set for September 27, 1957, by the Board and all parties were notified of such setting. On the 9th day of September, 1957, Gray filed a motion before the Board entitled "Motion to Make More Definite and Certain and to Strike." After due notice and

hearing this motion was overruled by the Board on the 12th day of September, 1957.

Thereafter on the 19th day of September, 1957, while this appeal was pending before the Board for hearing, Gray filed an application for a writ of mandamus in the district court of Shawnee County, Kansas. An alternative writ of mandamus issued directing the Superintendent, appellant herein, to appear and show cause on the 27th day of September, 1957, why a peremptory writ of mandamus should not issue. This was the same day set for the hearing of Gray's appeal from his dismissal on its merits before the Board. At Gray's instance the hearing before the Board was continued and still remains pending.

At the hearing in the district court on the application for the writ of mandamus Gray filed, and there was argued, his motion for judgment on the pleadings and for the issuance of a peremptory writ directing the Superintendent to furnish the Personnel Director of the Department of Administration a letter setting out specifically the reasons for his dismissal. This motion was sustained and a peremptory writ of mandamus issued on the 6th day of November, 1957. The Superintendent duly appeals to this court.

The pertinent statutory sections are G. S. 1955 Supp., 75-2929, and G. S. 1949, 75-2949. The Board is empowered to hear appeals in 75-2929, *supra*, in the following language:

"The state civil service board shall *hear appeals* taken to it pursuant to sections 75-2940 and 75-2949 of the General Statutes of 1949 or any amendments thereto, and shall conduct hearings and pass upon complaints by or against any officer or employee in the classified service for the purpose of demotion, suspension, removal, or dismissal of such officer or employee, in accordance with the provisions of this act and acts amendatory thereof or supplemental thereto, and shall establish such rules and regulations as may be necessary to give effect thereto. . . ." (Emphasis added.)

The provisions relative to dismissal of civil service employees are set forth in 75-2949, *supra*, in the following language:

"(1) An appointing authority may dismiss any permanent classified employee when he considers that the good of the service will be served thereby, and for disciplinary purposes may suspend without pay a permanent classified employee for a period not to exceed thirty days but no permanent employee in the classified service shall be dismissed for political, religious or racial reasons. *In case of a dismissal or suspension, the director shall be furnished with a statement in writing specifically setting forth the reasons for such dismissal or suspension. Upon request, a copy of such statement shall be furnished to such employee.*

"(2) Any employee so dismissed or suspended may request in writing

within thirty days after receipt of such notification a hearing before the board to determine the reasonableness of such action and the board shall grant the employee a hearing within forty-five days after receipt of such request.

"(3) After the hearing and consideration of the evidence for and against a suspension the board shall approve or disapprove such action and in the event of a disapproval the board shall order the reinstatement of the employee and the payment to the employee of such salary as has been lost by reason of such suspension.

"(4) After the hearing and consideration of the evidence for and against a dismissal the board shall approve or disapprove such action and may make any one of the following appropriate orders. (A) Order the reinstatement of the employee and the payment to the employee of such salary as has been lost by reason of such dismissal. (B) Sustain the dismissal of such employee, unless the board finds that the dismissal was based upon political, racial or religious reason, in which case, it shall order the reinstatement of the employee and the payment to the employee of such salary as has been lost by reason of such dismissal. (C) Except as provided above the board may sustain the dismissal, but may order the name of the dismissed employee returned to the appropriate registers, or may take steps to effect the transfer of such employee to a comparable position in another department.

"(5) The board shall establish such rules as may be necessary to give effect to the provisions of the above section." (Emphasis added.)

The general and well established rule is that mandamus is an extraordinary remedy, discretionary in character, and may ordinarily be brought only on relation of the proper public official, but private citizens may maintain it where they have a special and peculiar interest in the matter not common to the public generally and a clear legal right to compel performance of a specific act by the officer sought to be coerced. (*Bradley v. Cleaver*, 150 Kan. 699, 95 P. 2d 295.) The only purpose of a writ of mandamus is to require a person to whom it is issued to perform some act which the law specially enjoins as a duty resulting from an office, trust, or station. (*State, ex rel., v. Shanahan*, 173 Kan. 403, 246 P. 2d 305; G. S. 1949, 60-1701, and cases cited thereunder.) The statutory law of this state provides that a writ of mandamus may not issue in any case where there is a plain and adequate remedy in the ordinary course of the law. (*John Hancock Mutual Life Ins. Co. v. Sullivan*, 179 Kan. 167, 294 P. 2d 234; G. S. 1949, 60-1702, and cases cited thereunder.)

It has been held that mandamus cannot be used to control discretion, correct errors, or revise judicial action. Mandamus cannot be used as a substitute for appeal and it will not lie even though the party has no right of appeal or other remedy to review the action of a court, as the want of such remedy does not of itself entitle the

party aggrieved to the extraordinary remedy of mandamus. (*Brockman v. Bayman,* 135 Kan. 238, 10 P. 2d 31; and *Railroad Co. v. Shinn,* 60 Kan. 111, 55 Pac. 346.) Here, however, we are not concerned with judicial action but with ministerial duties and a ministerial board.

The question presented for determination in the instant case is one of first impression under the Kansas Civil Service law and no decision to which we have been cited by counsel is squarely in point.

In *Telephone Association v. Telephone Co.,* 107 Kan. 169, 190 Pac. 747, it was held that the statute forbidding a writ of mandamus, where there is a plain and adequate remedy in the ordinary course of law, was merely declaratory of the common law, and that the plaintiff there had a plain and adequate remedy by application to the court of industrial relations, as the legal successor to the public utilities commission. Counsel there contended that such remedy was out of the ordinary course of law and cited *Larabee v. Railway Co.,* 74 Kan. 808, 88 Pac. 72. Justice Burch there speaking for the court in 1920, explaining the *Larabee* case, recognized the change in times which brought about a tribunal such as the court of industrial relations, beyond the range of legislative vision in the *Larabee* case, and said:

". . . It is now clearly perceived that what is most needed in the field of business intercourse is expert administrative adjustment, and not court adjudication. Advancing step by step according to that principle, the lesiglature superseded the board of railroad commissioners with the public utilities commission, gave it authority to regulate public utilities generally, and then superseded the public utilities commission with the court of industrial relations, and gave it greatly amplified powers. The policy has become .the settled policy of the state. It contemplates that any controversy which naturally falls within the scope of the jurisdiction of the court of industrial relations shall be adjusted there, subject to such review by the courts as the statute provides and the mandamus statute must be interpreted accordingly. . . ." (p. 174.)

It is apparent from the statutes relating to civil service that there is no specific provision for appeal to the district court from any orders or determinations made by the Civil Service Board. In this respect the instant case differs from *Telephone Association v. Telephone Co.,* supra. The right of appeal, if any exists, must be found in the general provisions of the code of civil procedure. (G. S. 1949, 60-3301.) In this connection the foregoing statute has been construed in *Anderson v. Hedges,* 160 Kan. 665, 165 P. 2d 425. It was there held that the board of managers of the Kansas Soldiers' Home, a statutory board, was an administrative and not a judicial body,

and, in the absence of a specific statutory provision therefor, its acts were not subject to appellate review under the code of civil procedure. Similarly, while it may be said that the Kansas Civil Service Board acts *quasi*-judicially, it is only a ministerial board and performs no judicial functions. It is not a judicial tribunal and has never been classed as such.

The appellant herein argues that appellee Gray is attempting to seek a review of the Civil Service Board's ruling on his original motion to make more definite and certain and to strike portions of the letter addressed to the Director of Civil Service setting forth the reasons for Gray's dismissal. There is merit to this contention since Gray invoked the jurisdiction of the Civil Service Board by filing his written request for a hearing before the Board to determine the reasonableness of his dismissal, was granted a hearing by the Board, and prior to such hearing sought the Board's ruling on his "Motion to Make More Definite and Certain and to Strike" which was determined adversely to him. After such adverse ruling he immediately filed the mandamus action in an attempt to avoid the ruling. Under each of the statutes material herein the Board has rule making powers to give effect to the provisions of the statute. The Board in conducting hearings is not bound by the technical rules of evidence. (G. S. 1949, 75-2932.) Even if this were an action pending before a judicial tribunal, on the facts herein disclosed, no right of appeal would exist at this juncture. Clearly at this point in the proceedings before the Board mandamus could not be invoked against the Board to substitute the court's judgment for that of the Board.

The rules concerning ministerial acts of special tribunals established by statute and of public officers are well stated in *Allen v. Burrow,* 69 Kan. 812, 77 Pac. 555, as follows:

"It has often been said of special tribunals established by statute to pass on matters expressly committed to them that *their jurisdiction is exclusive and their determinations final,* and *that courts will not review their conclusions nor inquire by what method they were reached,* but always with an express or implied reservation that the statement holds good only where the action of such tribunal is characterized by good faith, and is free from fraud, corruption, and oppression . . . No rule is better settled than that courts will not interfere with public officers in the discharge of any duty involving the exercise of judgment or discretion, but this rule presupposes the existence of good faith, and relates to acts done under the guidance of opinions honestly formed, however mistaken in fact; it has no application to acts done under the influence of a corrupt motive. Even arbitrary and capricious conduct, amounting

to an abuse of discretion, will justify mandamus to compel a proper performance of duty, upon the theory that there has been, in fact, no real exercise of judgment . . ." (Emphasis added.) (pp. 820, 821.)

The foregoing rules stated in *Allen v. Burrow,* supra, were approved in *Anderson v. Hedges,* 160 Kan. 665, 165 P. 2d 425, where many authorities on this subject are reviewed (reference is made thereto).

In the case of *In re Chicago, R. I. & P. Rly. Co.,* 140 Kan. 465, 37 P. 2d 7, it was said in the opinion:

"Apart from the general appellate jurisdiction of the district court over all inferior tribunals exercising judicial powers conferred by the civil code . . ., that court has no inherent appellate jurisdiction over the official acts of public boards or public officers. Where the latter do not transcend their statutory powers nor act fraudulently or oppressively their official acts cannot be challenged in court except where the legislature has made some special provision for a judicial review. (*State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408, syl. ¶ 9.) . . .

. . . . . . . . . . . . . . .

"Of course the courts are always open to hear meritorious complaints against illegal or oppressive acts or delicts of nonjudicial public boards and officials, either at the instance of the state or of a private citizen especially aggrieved thereby. But not by appeal—where no statute confers a right of appeal. In the absence of a statutory right of appeal, judicial redress for illegal, fraudulent or oppressive official conduct must be invoked through some extraordinary legal remedy recognized in our practice—injunction, mandamus or quo warranto. (*State, ex rel., v. Mohler,* supra, 471, 472.)" (pp. 467, 468.)

We are not content, however, to confine our decision solely to this point, which construes the mandamus action of Gray as an attempt to review an intermediate decision of the Civil Service Board in the exercise of its jurisdiction.

The appellee Gray states that he is not seeking, and has never sought, a review of any procedure before the State Civil Service Board. (And it must be noted that the Civil Service Board has not been made a party to this controversy.) Gray argues that he only asked that the appellant Superintendent, the dismissing authority, carry out his mandatory duties under the statute, as a public official, to specifically give the reasons for appellee's dismissal. Appellee Gray contends that where a public official charged with performing ministerial duties fails to perform such duties and commits an oppressive official act, he may be required to perform by mandamus. He also contends the statutes provide no appeal as far as he is con-

cerned when the Superintendent refuses to furnish specific reasons for his dismissal.

It is argued that an opportunity to know and be able to prepare for defense against charges is as important as is the right to be heard thereon; that if opportunity to prepare a defense is denied, opportunity for a fair hearing is denied; that our philosophy of fair play demands that the language of the statute involved here be given the most liberal construction in favor of those protected by the statute to accomplish those purposes; that if such rights are denied the purpose of the civil service laws which are designated to eradicate the spoils system, the system of making appointments primarily from political considerations with its attendant evils of inefficiency and extravagance (citing, *Jagger v. Green,* 90 Kan. 153, 133 Pac. 174; 10 Am. Jur., Civil Service, § 2, p. 921; and G. S. 1949, 75-2925), is a "dead letter"; and, if the statement furnished here is sufficient, the spoils system can be reinstated with full force and vigor.

We are not impressed by Gray's argument relative to reinstating the spoils system. It is presumed that a statutory tribunal, such as the Kansas Civil Service Board, will conduct a hearing in compliance with the legislative mandates in good faith and with fairness and impartiality. If, after hearing, the Board finds that a civil service employee has been dismissed for political, religious or racial reasons, it is incumbent upon the Board to order reinstatement of the employee and the payment to the employee of such salary as has been lost by reason of the dismissal. The pleadings in the mandamus action make no charge that Gray has been dismissed for political reasons. In fact, Gray states in his brief: "He is attempting to get the specific reasons why he was dismissed and not merely the alleged reasons that the Appellant herein has given."

It may be noted under G. S. 1949, 75-2949, that the appointing authority upon dismissal of a permanent classified employee is obligated to furnish *the Director* with a statement in writing specifically setting forth the reasons for the dismissal. Upon *request* the dismissed employee shall be furnished *a copy of such statement.* The employee may request in writing, within thirty days after he receives notice of dismissal, a hearing before the Board to determine the reasonableness of such action.

First, it must be remembered that employment under state civil service is a privilege extended by the state, through laws enacted

by the legislature, to certain persons, and upon certain conditions. The rights to appointment under civil service, to acquire permanent classified status, and to enjoy permanent tenure as an employee of the state are wholly statutory. Every applicant for classified employment under state civil service necessarily submits himself to the conditions imposed by the applicable statutes and amendments thereto, whether enacted before or after employment. This, of course, does not mean that an employee has no recourse against invalid rules and regulations, or unlawful acts of the Board.

It does mean under the public policy of this state, established by the legislature, that any controversy with a classified employee under state civil service which falls within the scope of the jurisdiction of the State Civil Service Board, shall be adjusted there, irrespective of the fact that there is conferred no statutory right of appeal to the courts; and the section of the civil code providing that the writ of mandamus may not be issued in any case where there is a plain and adequate remedy in the ordinary course of law, must be interpreted accordingly. What is most needed in the field of classified employment under the state civil service law is expert administrative adjustment, and not court adjudication.

Gray feeling aggrieved by the specific reasons stated by the Superintendent, appellant herein, in his letter to the Director was obligated to pursue his statutory remedy by making a written request for a hearing before the State Civil Service Board, as he did, to determine the reasonableness of the action of the Superintendent in dismissing him from classified service. The Board's jurisdiction over the matter is exclusive and it is incumbent upon Gray to pursue his statutory remedy to a final determination by the Board. The Board had the power to rule Gray's motion correctly or incorrectly, and, if Gray is aggrieved by what he conceives to be an incorrect ruling, his grievance is with the Board, not with the Superintendent, for under the powers conferred upon the Board by the statutes the Superintendent was subject to the Board's direction insofar as compliance with Gray's motion was concerned.

Where the action of the Board in making its final disposition of the case is characterized by good faith, and is free from fraud, corruption, and oppression, the Board's determination is final, and courts will not review its conclusions nor inquire into the method by which they were reached.

If after final determination by the Board, Gray has a meritorius

complaint against illegal, fraudulent, or oppressive acts of the Board regarding its official duties enjoined by statute, he may resort to some extraordinary legal remedy recognized in our practice—injunction or mandamus—and courts will be open to hear the complaint.

The Superintendent's answer in the trial court requested an order dismissing the alternative writ of mandamus issued on the 19th day of September, 1957, for the reason that the application of Gray for a writ of mandamus showed on its face that the applicant had a complete and adequate remedy at law, and that the application for a writ of mandamus and the alternative writ were premature. Failure of the trial court to dismiss the action, submitted to the court on the pleadings, was assigned as error by the appellant. Based upon what has heretofore been stated, the trial court should have entered an order dismissing the alternative writ and given the appellant, defendant below, judgment for costs.

In view of the disposition made other errors specified are immaterial.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the action.