21 Kan. App. 2d 878 (1995)
In the Matter of J.L.
No. 73,895
Court of Appeals of Kansas.
Opinion filed December 22, 1995.
Kenneth R. Smith, of Kansas Department of Social and Rehabilitation Services, for appellant.
*879 Joe Shepack, county attorney, for appellee.
Before GREEN, P.J., ELLIOTT, J., and JOHN ANDERSON III, District Judge, assigned.
ANDERSON, J.:
The Kansas Department of Social and Rehabilitation Services (SRS) appeals the trial court's order requiring SRS to pay Ellsworth County the costs for holding J.L. at WaKeeney Detention Center.
In April 1994, J.L., a juvenile, was placed in SRS custody at St. Francis Academy of Ellsworth, Kansas. While in SRS custody, J.L. left St. Francis Academy and stole a car. On June 25, 1994, the Ellsworth County Sheriff arrested J.L. on car theft charges and placed him in WaKeeney Detention Center. On June 27, 1994, a detention hearing was held on the car theft charges in Ellsworth County in case No. 94-JV-21, and the Ellsworth County District Court ordered that J.L. be detained at WaKeeney Detention Center. On June 29, the Ellsworth County District Court adjudicated J.L. a juvenile offender and placed him in SRS custody. SRS again placed J.L. at St. Francis Academy.
On August 10, 1994, J.L. again left St. Francis Academy and stole a vehicle. The Ellsworth County Sheriff arrested him for the theft on that same day and detained him at WaKeeney Detention Center. On August 11, 1994, the Ellsworth County District Court held a detention hearing for the car theft charges in case No. 94-JV-35. The court ordered J.L. to be detained at WaKeeney Detention Center pending his trial. The trial for 94-JV-35 was held on August 24, 1994, and J.L. was adjudicated a juvenile offender. The court ordered direct commitment to the Youth Center at Topeka. J.L. remained at WaKeeney Detention Center pending transportation to the Youth Center at Topeka. On September 1, 1994, the Ellsworth County Sheriff transported J.L. from WaKeeney Detention Center to the Youth Center.
In 94-JV-21, J.L. was detained for 2 days prior to the court entering a detention order. After the court entered a detention order, J.L. was detained for 2 additional days prior to the adjudication and disposition hearing. These 4 days of detention cost Ellsworth County $200 per day, totaling $800 for the 4 days.
*880 In 94-JV-35, J.L. was detained for 1 day prior to his detention hearing and was detained for 13 additional days until the date of his trial. Once J.L. was adjudicated a juvenile offender, there was a 7-day lag time between the trial and disposition order date and transportation to the Youth Center. Ellsworth County paid for 14 days of detention at $200 per day for a total of $2,800.
The Ellsworth County Attorney brought a motion requesting the Ellsworth County District Court to order SRS to reimburse the county for the expenses incurred in detaining J.L. at WaKeeney. The court found that J.L. remained in SRS custody during his period of detention and thus ordered SRS to reimburse the county for the following dates: from June 25, 1994, to June 29, 1994 (4 days), and from August 10, 1994, to August 24, 1994 (14 days). The court found that the expenses after August 24, 1994, should be paid for by the county because, at that point, J.L. was no longer in SRS custody. The court found SRS liable for $3,600 (18 days at $200 per day).
SRS appeals the trial court's decision ordering it to reimburse the county for J.L.'s detention costs.
In order to decide the issues in this case, this court must interpret the relevant statutes from the Kansas Juvenile Offenders Code, K.S.A. 38-1601 et seq. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." Foulk v. Colonial Terrace, 20 Kan. App.2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), rev. denied 257 Kan. 1091 (1995).
In re C.C., 19 Kan. App.2d 906, 907-08, 878 P.2d 865, rev. denied 255 Kan. 1002 (1994), presented a similar issue. There, the trial court determined that if C.C. were placed in SRS custody, he would be placed in a foster home pending screening for Level VI placement, whereas he was presently in a Level VI facility in which he had the opportunity to remain. The trial court ordered C.C. to be placed in the St. Francis Academy's custody and for SRS to pay.
SRS appealed the trial court's order. On appeal, we held that once custody of a child is awarded to the Secretary, the court is not authorized under the Code for Care of Children or the Juvenile Offenders Code to order a specific placement of that child. We *881 further stated that the trial court's making such an order in effect removed C.C. from SRS custody. 19 Kan. App.2d at 909.
In determining whether SRS was responsible for the expenses for C.C., we looked to K.S.A. 38-1616(a), which states:
"(1) If a juvenile alleged or adjudged to be a juvenile offender is not eligible for assistance under K.S.A. 39-709 and amendments thereto, expenses for the care and custody of the juvenile shall be paid out of the general fund of the county in which the proceedings are brought....
(2) When a law enforcement officer has taken a juvenile into custody as authorized by subsection (a) of K.S.A. 38-1624 and amendments thereto and delivered the juvenile to a person or facility, other than a juvenile detention facility, designated by the secretary or when custody of a juvenile is awarded to the secretary, the expenses of the care and custody of the juvenile may be paid by the secretary out of the state social welfare fund, subject to payment or reimbursement as required in subsection (b), even though the juvenile does not meet the eligibility standards of K.S.A. 39-709 and amendments thereto." (Emphasis added.)
We found that C.C. was not eligible for assistance under K.S.A. 39-709, which sets out the eligibility requirements of applicants for and recipients of social welfare assistance. We also found that "C.C.'s placement in St. Francis was not designated by SRS nor did custody of C.C. remain with SRS at the close of the juvenile proceeding." 19 Kan. App.2d at 910. Thus, SRS was not liable for the expenses and care of C.C. at St. Francis. See In re D.J.K, 21 Kan. App.2d 338, 899 P.2d 509 (1995).
In the present case, the law enforcement officer who took J.L. into custody had statutory authority to do so. See K.S.A. 38-1624(a). K.S.A. 38-1624(c) states:
"When any law enforcement officer takes an alleged juvenile offender into custody pursuant to subsection (a) ... and determines that the juvenile shall be detained ..., the juvenile shall be taken without unnecessary delay ... to ... a juvenile detention facility or youth residential facility which the court or the secretary of social and rehabilitation services shall have designated."
Consequently, the placement of a juvenile in a juvenile detention facility under this statute would not divest SRS of custody because such placement is not prohibited but, rather, is expressly authorized. *882 SRS should be responsible for the cost of J.L's detention from June 25 to 27.
Nevertheless, when the trial court ordered the juvenile to be detained at WaKeeney during the June 27 detention hearing, the court made a direct placement of J.L., contrary to the holding in In re D.J.K., 21 Kan. App.2d at 339; In re C.C., 19 Kan. App.2d at 909. Consequently, when the court made a direct placement of J.L., the court removed J.L. from the custody of SRS.
Ellsworth County tries to distinguish In re C.C. from the present case by saying that the court-ordered placement of C.C. was not a disposition authorized by statute, whereas the present case involves pretrial detention costs of a juvenile offender already in SRS custody. This rationale, however, does not take into consideration K.S.A. 1994 Supp. 38-1664(b), which does not authorize the district court to order specific placement while a child is in the Secretary's custody. See In re C.C., 19 Kan. App.2d at 909. K.S.A. 1994 Supp. 38-1664(b) does not differentiate between pretrial placement and post-trial placement. "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." Martindale v. Tenny, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). It is therefore not up to this court to limit K.S.A. 1994 Supp. 38-1664(b) to only those instances involving post-trial placement.
K.S.A. 38-1616 sets out who pays the expenses for the care and custody of a juvenile. It is this court's duty to reconcile different statutory provisions to make them consistent, harmonious, and sensible, and to construe the statutes to give effect to legislative intent as determined from consideration of the entire act. Podrebarac v. Kansas Dept. of Revenue, 15 Kan. App.2d 383, 385, 807 P.2d 1327 (1991).
SRS argues that 38-1616 does not specifically require payment of expenses by SRS. It cites to 38-1616(a)(1), which reads in part that if a "juvenile offender is not eligible for assistance under K.S.A. 39-709 ..., expenses ... shall be paid out of the general fund of the county." On the other hand, 38-1616(a)(3) reads: "When the custody ... is awarded to the secretary of social and rehabilitation services, the expenses ... shall not be paid out of the *883 county general fund." SRS does not, however, discuss 38-1616(a)(2), which states that the expenses of the care and custody of the juvenile may be paid by the Secretary out of the state social welfare fund when custody of the juvenile is awarded to SRS.
In In re C.C. we found that custody of C.C. did not remain with SRS at the close of the juvenile proceeding, and therefore, under K.S.A. 38-1616(a)(2), SRS was not liable for the expenses and care of C.C. 19 Kan. App.2d at 910.
The present case can be distinguished from In re C.C. Although the June 27 order removed J.L. from the custody of SRS, custody was again awarded to SRS at the close of juvenile proceedings on June 29. In reading K.S.A. 38-1616(a)(2) in conjunction with this court's interpretation of the statute in In re C.C., K.S.A. 38-1616(a)(2) creates a liability for SRS. Consequently, SRS is liable for $800, which is the amount of money the county paid for the detention of J.L. from June 25 to June 29. The county, however, is liable for the cost of the remaining days of J.L.'s detention between August 10 to August 24 ($2,800) because SRS was not given custody of J.L. after the adjudication of 94-JV-35.
SRS claims that if it is liable for the costs, it is not liable for the full costs.
"Under the doctrine of operative construction, the court will give deference to an agency's interpretation of the law. If, however, the ruling court finds that the administrative body's interpretation is erroneous as a matter of law, the court should take corrective steps; the determination of an administrative body of questions of law is not conclusive, and, while persuasive, is not binding on the courts." Boatright v. Kansas Racing Comm'n, 251 Kan. 240, Syl. ¶ 9, 834 P.2d 368 (1992).
SRS states in its brief that "SRS' practice of paying a less than total cost for per diem detention has been followed for many years." SRS, however, states no authority on this point. The statute itself says nothing about partial payment; thus, SRS is liable to pay the full per diem amount.
Finally, SRS alludes to the fact that the costs for detaining J.L. may not have been reasonable. In its notice of appeal, SRS appeals the trial court's finding that SRS should reimburse Ellsworth County for the detention costs, but it does not appeal the reasonableness of the costs. "It is a fundamental proposition of Kansas *884 appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal." Hess v. St. Francis Regional Med. Center, 254 Kan. 715, 718, 869 P.2d 598 (1994).
In accordance with 38-1616(a)(2), SRS is liable for $800, the cost of J.L.'s detention from June 25 to 29, and Ellsworth County is liable for the remaining $2,800, the cost of J.L.'s detention from August 10 to 24.
Affirmed in part and reversed in part.